UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X

**MATTHEW DAVIDE,**

                         Plaintiff,

               **- against -**

**ANDREW M. SAUL,** *Commissioner of Social Security,*

                     Defendant.

:
:
:
:
:
:
:
:

**MEMORANDUM DECISION AND ORDER**

20-CV-3690 (AMD)

-------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

       The plaintiff challenges the Social Security Commissioner's decision that he was not disabled for the purpose of receiving Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act"). (ECF No. 1 ¶ 1.) Before the Court are the parties' cross-motions for judgment on the pleadings. (ECF Nos. 9, 10, 12.) For the reasons set forth below, the plaintiff's motion for judgment on the pleadings is granted, the Commissioner's motion is denied, and the case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

       The 41-year-old plaintiff, a former police officer, had back surgery in 2010. In December 2014, he re-injured his back in a work-related car accident. (ECF No. 1 ¶ 8; ECF No. 10 at 3; Tr. 212, 288, 294.) He had spine surgery on March 11, 2015 and again on February 21, 2017. (ECF No. 10 at 8, 14; Tr. 335, 393-99.) His treatment included regular physical therapy, steroid injections and pain medication (*see, e.g.*, ECF No. 10 at 11), but he still had lower back and right leg pain. (ECF No. 10 at 17; Tr. 417.) In June 2016, the New York City Medical Board concluded that the plaintiff could no longer work as a police officer, and granted him accidental disability retirement benefits. (ECF No. 1 ¶ 10.)

Three of the plaintiff's treating physicians—Dr. Sheeraz Qureshi and Dr. John Reilly, both orthopedic surgeons, and Dr. Perry Drucker, a physical medicine and rehabilitation specialist—concluded that he was disabled.  Dr. Qureshi, who treated the plaintiff beginning in January 2015, determined in January 2016 that the plaintiff was "disabled from work because he cannot lift heavy objects and cannot sit or stand for prolonged periods because of instability in his spine and because of constant pain in his lower back and right leg.  This is a permanent disability."  (Tr. 338, 369.)  Dr. Reilly, who started treating the plaintiff in December 2016, made multiple findings—in December 2016, September 2017, May 2018, July 2018 and April 2019—that the plaintiff was "totally disabled" and "unable to work."  (Tr. 204, 205, 235, 423, 425, 426, 432-34.)  On July 7, 2018, he made the following determination:

> The physical disabilities resulting from the incident (12/02/2014) involve pain in his low back radiating into his right leg limiting his physical capacities.  His ability to stand or walk is no more than 15 minutes before spasm, tightness and pain, burning in nature, make him stop.  Similarly[,] his capacity to sit in one position uninterrupted is limited to 15 minutes. . . .  At this time[,] the patient has made full surgical recovery from the fusion.  The fusion is healed[;] however[,] the disability resulting from the injury persists. . . .  His capacity for activities of daily living are basic[;] he can bathe, toilet and dress independently.  The prognosis, having undergone two spinal surgeries and an exhaustive conservative treatment protocol, at this time[,] is poor[,] and there will be permanency associated with this injury.

(Tr. 422-23.)  Dr. Reilly concluded that the plaintiff was "left with a permanent total disability," and that "the likelihood of [the plaintiff] performing any type of gainful employment at any time in the future is poor."  (Tr. 423.)  Dr. Drucker had treated the plaintiff since November 2016, and during a March 13, 2019 examination, observed "L3-S1 paraspinal spasm and tenderness, moderate," and "positive straight leg raise on the right at 45 degrees."  (Tr. 428.)  He opined:

> Patient . . . still has persistent disability from his injuries.  [The plaintiff] can ambulate independently but does have a limit of approximately 20-30 minutes . . . .  Patient's capacity to partake in his activities of daily living are basic.  He could bathe, toilet and dress independently.

> Patient has undergone two spinal surgeries, status-post his . . . motor vehicle accident and has exhausted conservative rehabilitative intervention.  At this time, patient's functional prognosis is poor[,] and there will be permanicity [sic] associated with his injury.  In my opinion, with a good deal of medical certainty, [the plaintiff] is presently totally disabled[,] and this is permanent in nature.  The likelihood of this patient performing any significant gainful employment at any time in the future is poor.

(Tr. 429.)

On January 15, 2018, the plaintiff submitted a claim for disability benefits to the

Department of Justice's ("DOJ") Public Safety Officers' Benefits Office ("PSOB").[1]  (Tr. 212.)

Dr. William Oetgen did an independent evaluation of the plaintiff's PSOB claim in November

2018.  (Tr. 213.)  He found that the plaintiff returned to work as a police officer after the

December 2014 accident, but was placed on light duty "because of his painful back and right leg

symptoms."  (*Id.*)  After reviewing the plaintiff's records, Dr. Oetgen determined:

> A subsequent lumbar MRI scan demonstrated a disc herniation at L4-5.  When conservative therapy failed to relieve his painful symptoms, a right-sided laminectomy and discectomy at L4-5 was accomplished on March 11, 2015.  Additional physical therapy was prescribed[,] and he was referred to a pain management specialist.

> Severe postoperative pain persisted[,] and [the plaintiff] was diagnosed with failed back surgery syndrome.  Additional surgery was eventually recommended and on February 21, 2017[,] [the plaintiff] underwent an L4-5 anterior and posterior fusion.  Despite this second surgery, he continued to suffer from intractable lower back and right leg pain.

> [The plaintiff] currently suffers from severe chronic low back and right leg pain.  The pain radiates through the right hamstrings and calf into the foot.  This pain is burning in nature with tightness and spasm.

---

[1] "The PSOB Act, codified as amended at 34 U.S.C. § 10281, *et seq.*, provides for the payment of a one-time death and disability benefit to families of public safety officers who have died 'as the direct and proximate result of a personal injury sustained in the line of duty' or who have become permanently and totally disabled as a result of such an injury."  *Massone v. U.S. Dep't of Just.*, No. 18-CV-4908, 2020 WL 3000416, at *4 (S.D.N.Y. June 4, 2020) (quoting 34 U.S.C. §§ 10281(a), (b)).

(Tr. 213-14.)  Dr. Oetgen concluded that the plaintiff was "permanently" and "totally disabled due to severe pain, limited mobility, and very significant functional limitations."  (Tr. 214.)  He explained that "[d]ue to [the plaintiff's] very brief sitting tolerance of only 15 minutes[,] it would be impossible for him to perform even sedentary occupational tasks," and that "his severe low back and right leg pain, combined with daily narcotic medications, would adversely affect the attention and concentration which would be necessary for him to successfully accomplish any form of work."  (*Id.*)  Upon review of the plaintiff's records and Dr. Oetgen's findings, the PSOB determined on February 1, 2019 that the plaintiff was "permanently and totally disabled" for the purposes of the PSOB Act.[2]  (*Id.*)

On January 4, 2017, the plaintiff applied for DIB, alleging disability since June 8, 2016 from multiple impairments, including the chronic pain in his lower back and right leg.  (Tr. 127, 140.)  The plaintiff listed the following conditions in his application: lumbar spine derangement, left knee derangement, melanoma psoriasis, and celiac disease.  (Tr. 140.)  The Social Security Administration ("SSA") denied the plaintiff's DIB claim on April 10, 2017.  (Tr. 58-69.)  The plaintiff requested a hearing before an Administrative Law Judge.  (Tr. 70-84.)

Dr. C. Timothy Bessent did not examine the plaintiff, but reviewed his medical records in February 2019, and completed a physical residual functional capacity assessment.  (Tr. 544-52.)  Dr. Bessent opined that during an eight-hour workday, the plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently; stand or walk for about four hours; sit for about

---

[2] The PSOB Act's governing regulations provide that: "An individual is permanently disabled only if there is a degree of medical certainty (given the current state of medicine in the United States) that his disabled condition—(1) Will progressively deteriorate or remain constant, over his expected lifetime; or (2) Otherwise has reached maximum medical improvement. . . .  An individual is totally disabled only if there is a degree of medical certainty (given the current state of medicine in the United States) that his residual functional capacity is such that he cannot perform any gainful work."  (Tr. 215 (quoting 28 C.F.R. § 32.23).)

six hours with periodic alternating positions to relieve pain or discomfort; and occasionally use right foot controls.  (Tr. 546.)  Dr. Bessent also confirmed, in answer to a question, that there were "medical source conclusions about the [plaintiff's] limitations or restrictions which [were] significantly different from" his findings.  (Tr. 551.)  He did not identify the findings from which his conclusions differed, or explain the reasons for the differences.

On April 30, 2019, Administrative Law Judge Christine Cutter ("the ALJ") held a video hearing at which the plaintiff, represented by counsel, testified.  (Tr. 26-44.)  The plaintiff testified about the pain in his lower back and right leg, and described the pain he experienced after sitting for more than 20 minutes: "The radicular pain increases and increases, so my right glut[e] and my right hamstring, sometimes down in the calf, it just . . . has like a burning sensation, and it just builds and builds."  (Tr. 35.)  He also discussed various treatments, including surgeries, physical therapy, and medication—but said none of them provided long-term relief.  (Tr. 33-35.)

The plaintiff testified that he and his wife had three young children.  The plaintiff's wife worked from home four days a week so that she could take care of their youngest child, and the plaintiff's mother and mother-in-law also helped with childcare.  (Tr. 38.)  The plaintiff was not able to do much in terms of childcare.  He read to the children at night, but his wife "takes care of the children, gets them ready for school, and I just kind of . . . move around, because sitting or like, I couldn't really bend down in the morning to like get the kids' shoes or anything like that, because I am so stiff."  (Tr. 37.)  The plaintiff did "some" household chores, and "tr[ied] not to leave it all for [his] wife," but acknowledged that housework "just falls under [his] wife's umbrella, unfortunately" because of his back and leg pain.  (Tr. 35, 38.)  As a result, the plaintiff's wife did "dishes and most of the cooking," as well as the "big food shopping[]."  (*Id.*)

A vocational expert, Whitney Eng, ("the VE") testified that the plaintiff could do the following unskilled work: parking lot cashier, storage rental facility clerk and order caller. (Tr. 42.)

In a May 22, 2019 decision, the ALJ determined that the plaintiff was not disabled and denied his claim for DIB. (Tr. 7-25.) The ALJ found that the plaintiff's "spine disorder" was a severe impairment. (Tr. 12.) In her view, however, this impairment did not meet or medically equal the severity of any impairment listed in the applicable Social Security regulations. (Tr. 13-14.) The ALJ determined that "the level of impairment alleged by [the plaintiff] [was] not supported by the evidence of the record:"

> Although he experiences some symptoms related to his spine disorder, including back and right lower extremity pain, the evidence indicates that he retains the ability to complete a wide range of daily activities, such as attending to his personal needs, preparing meals, completing household chores, driving a vehicle, and going shopping. Moreover, the [plaintiff] takes care of his young children, including getting them ready for daycare in the morning, feeding them, and changing their diapers.

(Tr. 17.) She gave "great weight" to Dr. Bessent's assessment, and noted that he "[was] thoroughly familiar with the [SSA] disability standards and based [his] opinions on a comprehensive review of the medical evidence of record:"

> Dr. Bessent's assessment is consistent with the evidence, which shows that the [plaintiff] alleges right-sided back pain radiating into his hip, buttock, and leg; however, despite these symptoms, physical examinations show that he presents as alert, oriented, and in no acute distress, and examiners note that he has 5/5 strength, his gait is within normal limits, and he ambulates effectively and without any assistive devices. Moreover, the evidence reveals that the [plaintiff] retains the physical functioning sufficient to complete numerous daily activities, including taking care of his young children, completing personal care tasks, preparing meals, completing household chores, driving a vehicle, and going shopping.

(*Id.*) The ALJ assigned "little weight" to the opinions of Dr. Reilly, Dr. Drucker and Dr. Qureshi in part because their findings were inconsistent with the plaintiff's daily activities. (Tr. 17-18.) In addition, she determined that Dr. Drucker's examination notes did not support his opinion,

because although Dr. Drucker noted "some paraspinal spasm and tenderness and positive straight leg on the right" leg, "the remainder of his examination was largely benign," including the plaintiff's range of motion and strength in his left leg.  (Tr. 18.)  The ALJ also discounted Dr. Qureshi's opinion because "it was provided before the [plaintiff's] alleged onset date," and "it appear[ed] to be largely based on the [plaintiff's] subjective self-report of symptoms and limitations."  (*Id.*)  The ALJ assigned "little weight" to the PSOB's disability determination, and reasoned, "Whether or not the [plaintiff] is disabled is a determination reserved for the Commissioner.  Furthermore, the Department of Justice uses different rules than what the SSA uses for deciding disability claims, and this finding is not supported by the evidence of record."  (*Id.*)

The ALJ found that the plaintiff had "the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b)" with certain limitations.  (Tr. 14.)  In her view, the plaintiff could, in an eight-hour workday, "stand and/or walk about 4 hours" but "must be able to change positions to the opposite (stand to sit and vice versa) every hour for 3 to 5 minutes," and could "occasionally use right foot controls," "occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl; never climb ladders, ropes, and use scaffolds; frequently balance; and never work at unprotected heights."  (*Id.*)  Finally, based on the VE's testimony, the ALJ ruled that although the plaintiff could not perform his past relevant work as a police officer, he could perform the jobs identified by the VE.  (Tr. 19-20.)

On June 10, 2020, the Appeals Council denied the plaintiff's request for review, rendering the ALJ's decision final.  (Tr. 1-6.)

## STANDARD OF REVIEW

An ALJ employs a five-step sequential process to evaluate whether a claimant meets the definition of disabled under the Act.  *See* 20 C.F.R. § 404.1520(a)(4):

> [I]f the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do.

*Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008) (internal quotation marks and citation omitted).

The claimant "bears the burden of proving his or her case" at steps one through four of this framework.  *Id.* at 128 (citing *Butts v. Barnhart*, 388 F.3d 377, 383 (2d Cir. 2004)).  At step five, the burden shifts to the Commissioner, who must show that given the claimant's residual functional capacity ("RFC"), age, education and work experience, the claimant is "able to engage in gainful employment within the national economy."  *Sobolewski v. Apfel*, 985 F. Supp. 300, 310 (E.D.N.Y. 1997).  A court reviewing a Commissioner's final decision to deny DIB must "determine[e] whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quoting *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 507 (2d Cir. 2009)).  Substantial evidence amounts to "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Greek v. Colvin*, 802 F.3d 370, 375 (2d Cir. 2015) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  If substantial evidence exists to support the Commissioner's factual findings, those findings must be sustained.  42 U.S.C. § 405(g).  A district court judge cannot substitute her own judgment for that of the Commissioner, "even if [she] might justifiably have reached a different result upon *de novo* review."  *Cerqueira v. Colvin*, No. 14-CV-1134, 2015 WL 4656626, at *11 (E.D.N.Y. Aug. 5, 2015) (quoting *Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991)).

Although the Commissioner's factual determinations are binding when they are supported by substantial evidence, a court will not defer to the Commissioner's decision "[w]here an error of law has been made that might have affected the disposition of the case." *Pollard v. Halter*, 377 F.3d 183, 188-89 (2d Cir. 2004) (alteration in original) (quoting *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir. 1984)). Thus, "legal error alone can be enough to overturn the ALJ's decision." *Ellington v. Astrue*, 641 F. Supp. 2d 322, 328 (S.D.N.Y. 2009).

## DISCUSSION

The plaintiff challenges the ALJ's RFC determination on the ground that she did not give proper weight to the opinions of his treating physicians—Dr. Reilly, Dr. Drucker and Dr. Qureshi—and "improperly elevated the opinion of the non-examining medical" consultant, Dr. Bessent. (ECF No. 10 at 19.) The plaintiff also claims that the ALJ did not give appropriate consideration to the PSOB's disability determination. (*Id.* at 23-25.)

## I.     The ALJ's Determination of the Plaintiff's RFC

For claims filed before March 27, 2017, the ALJ must apply the "treating physician rule," 20 C.F.R. § 404.1520c(c)(2), which requires that the ALJ give "controlling weight" to the medical opinion of a doctor who has "an ongoing treatment relationship" with the plaintiff as long as the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. §§ 416.927(a)(2), (c)(2). "[I]f the ALJ decides the opinion is not entitled to controlling weight, [she] must determine how much weight, if any, to give it." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "In doing so, [the ALJ] must explicitly consider the following, nonexclusive *Burgess* factors: (1) the frequen[cy], length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id.* at 95-96

(quotation marks omitted) (quoting *McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014)); *see also Burgess*, 537 F.3d at 129. "At both steps, the ALJ must give good reasons in [her] notice of determination or decision for the weight [she] gives the treating source's medical opinion." *Estrella*, 925 F.3d at 96 (alterations, citation and quotation marks omitted). "An ALJ's failure to 'explicitly' apply the *Burgess* factors when assigning weight at step two is a procedural error." *Id.* "[A] reviewing court should remand for failure to explicitly consider the *Burgess* factors unless a searching review of the record shows that the ALJ has provided 'good reasons' for [her] weight assessment." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019).

"A corollary to the treating physician rule is that the opinion of a non-examining doctor by itself cannot constitute the contrary substantial evidence required to override the treating physician's diagnosis." *Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) (citation omitted); *see also Vargas v. Sullivan*, 898 F.2d 293, 295-96 (2d Cir. 1990) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisers' assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant." (citation and quotation marks omitted)).

As the Commissioner recognizes, Dr. Qureshi, Dr. Drucker and Dr. Reilly all had treating relationships with the plaintiff that began in January 2015, November 2016 and December 2016, respectively.[3] (ECF No. 12 at 21.) Therefore, the ALJ was required to determine first whether the treating physicians' opinions merited controlling weight. *See* 20 C.F.R. § 416.927(c)(2).

---

[3] Although the ALJ did not explicitly recognize the doctors as treating physicians, she reviewed and cited notes that reflected at least a portion of the treating relationships. (*See, e.g.*, Tr. 16 (citing Dr. Drucker's treating notes from September 12, 2018 to March 13, 2019).)

The ALJ did not refer to the controlling weight presumption or explain why she did not give the treating physicians' opinions controlling weight.  (Tr. 17-18.)

Nor did the ALJ address the first, second, and fourth *Burgess* factors for any of the treating physicians.  She did not mention the frequency, length, nature and extent of the physicians' treatment of the plaintiff, the extent to which medical evidence supported their opinions, or whether they were specialists.  *See Estrella*, 925 F.3d at 96 (highlighting the ALJ's failure to consider physician's treatment of the plaintiff over approximately five years).

While the ALJ discussed whether the treating physicians' opinions were consistent with "the record," she based her decision on Dr. Bessent's opinion, using it as the yardstick against which she considered the treating doctors' findings.  She also misread the plaintiff's testimony about his daily activities.  (Tr. 17.)  Because Dr. Bessent did not examine the plaintiff, his opinion "deserve[s] little weight in the overall evaluation of [the plaintiff's] disability," *Vargas*, 898 F.2d at 295, and "cannot constitute the contrary substantial evidence required to override the treating physician[s'] diagnosis."  *Hidalgo*, 822 F.2d at 297.

Moreover, the ALJ's finding that Dr. Bessent's opinion was consistent with the plaintiff's testimony about his daily activities is premised on a misreading of the testimony.  The ALJ wrote that "the [plaintiff] retains the physical functioning sufficient to complete numerous daily activities, including taking care of his young children, completing personal care tasks, preparing meals, completing household chores, driving a vehicle, and going shopping."  (Tr. 17.)  In fact, the plaintiff testified that he read to his children in the evening, but that his back pain prevented him from helping them get ready for school; his wife took care of their youngest child, with the help of the plaintiff's mother and mother-in-law.  (Tr. 37-38.)  The plaintiff also testified that he "tr[ied] not to leave [household chores] all for [his] wife," but that chores nevertheless "just [fell]

11

under [his] wife's umbrella."  (Tr. 35, 38.)  He did not prepare meals, except for making a sandwich or reheating food in the microwave; his wife did the cooking and dishes.  (Tr. 37.)  She also did the bulk of the grocery shopping; the plaintiff shopped only occasionally—"a simple, quick, in-and-out-type thing."  (Tr. 38.)  In short, the plaintiff made it clear that his contributions to housework and childcare were limited because of his back and leg pain.[4]

Citing the Second Circuit's summary decision in *Guerra*, the Commissioner argues that the ALJ provided "good reasons" for her assessment.  (ECF No. 12 at 21.)  The ALJ in *Guerra*, however, gave far more extensive reasons for his conclusion.  *Guerra* 778 F. App'x at 76.  For example, he explained that he assigned the treating physician's opinions less than controlling weight because "they were only conclusory; they stated contradictory things; they ran contrary to the treatment records; they ran contrary to Guerra's testimony; and they were vague, of unspecified duration, and conditioned on scheduled surgical procedures."  *Id.*  The Second Circuit also noted that the ALJ's determination was "[s]upported by ample treatment notes, physical examination findings, and Guerra's testimony."  *Id.*  In this case, however, the ALJ

---

[4] Even if the plaintiff could have done the things the ALJ described—childcare, housework and the like— it would not be sufficient to reject the treating physicians' opinions.  "Indeed, it is well-settled that the performance of basic daily activities does not necessarily contradict allegations of disability, 'as people should not be penalized for enduring the pain of their disability in order to care for themselves.'" *Cabibi v. Colvin*, 50 F. Supp. 3d 213, 238 (E.D.N.Y. 2014) (quoting *Woodford v. Apfel*, 93 F. Supp. 2d 521, 529 (S.D.N.Y. 2000)) (collecting cases); *see also Mahon v. Colvin*, No. 15-CV-2641, 2017 WL 1232471, at *15 (E.D.N.Y. Mar. 31, 2017) ("Yet, this heavy reliance on Plaintiff's reported daily activities of self-care, child-care, and hobbies does not provide a sufficient basis for discounting almost entirely the well-supported expert testimony of licensed psychiatrists and psychologists regarding Plaintiff's ability to sustain a *job*." (emphasis in original)); *Nusraty v. Colvin*, 213 F. Supp. 3d 425, 440 (E.D.N.Y. 2016) ("Because 'a claimant need not be an invalid to be found disabled,' Plaintiff's reports of her daily activities by themselves are not substantial evidence that she was not disabled and are insufficient to justify according [the treating physician's] opinion limited weight." (quoting *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998)); *id.* ("[W]hen a disabled person gamely chooses to endure pain in order to pursue important goals . . . it would be a shame to hold this endurance against him." (alterations in original) (quoting *Balsamo*, 142 F.3d at 81)).

rejected the conclusions of three treating doctors, and relied instead on a non-examining

physician's opinion and a misreading of the plaintiff's testimony about his daily activities.[5]

Remand is required so that the ALJ can re-evaluate the medical record and apply the

*Burgess* factors.

**II.    The Public Safety Officers' Benefits Office Determination**

The plaintiff argues that "[t]he ALJ also improperly dismissed the February 1, 2019

report by the [DOJ] finding [him] permanently and totally disabled under the [PSOB's] rules."[6]

(ECF No. 10 at 23.)  The Commissioner contends that "the ALJ properly considered the PSOB

determination but gave it little weight as the determination of disability under the Social Security

Act is reserved to the Commissioner."  (ECF No. 12 at 23.)

"While the determination of another governmental agency that a social security disability

benefits claimant is disabled is not binding on the [Commissioner], it is entitled to some weight

and should be considered."  *Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975).  In

---

[5] The ALJ also discounted Dr. Drucker's opinion because it was "not supported by . . . his own examination notes."  (Tr. 18.)  While the ALJ acknowledged that Dr. Drucker noted "paraspinal spasm and tenderness and positive straight leg raise on the right [leg] at 60 degrees," she determined that "the remainder of [Dr. Drucker's] examination [was] largely benign" because he also noted the plaintiff's range of motion and strength in his leg.  (*Id.*)  These notes do not address the plaintiff's reported chronic pain in his back and leg, and are not inconsistent with Dr. Drucker's opinion.

In addition, the ALJ discounted Dr. Qureshi's opinion in part because "it was provided before the [plaintiff's] alleged onset date."  (Tr. 18.)  "Although the timing of a treating physician's report is plainly relevant to the ALJ's determination of the weight, if any, to give it, a treating physician's opinion need not be rejected solely because it predates the relevant time period."  *Mura v. Colvin*, No. 16-CV-6159, 2017 WL 2543939, at *5 (W.D.N.Y. June 13, 2017); *see also Garcia Medina v. Comm'r of Soc. Sec.*, No. 17-CV-6793, 2019 WL 1230081, at *2 (W.D.N.Y. Mar. 15, 2019) ("While the ALJ may have had sound arguments to discredit some of these opinions . . . because they . . . came before the alleged onset date[,] they were relevant at the very least and she should have at least addressed them.") (collecting cases).

[6] The SSA published revised regulations stating that for claims filed after March 27, 2017, an ALJ need not address in her determination "a decision made by any other governmental agency or a nongovernmental entity about whether [a claimant] [is] disabled, blind, employable, or entitled to any benefits."  20 C.F.R. §§ 404.1504, 416.904.  As the plaintiff points out, the new regulations do not apply here as he filed his claim on January 4, 2017, before the changes took effect.  (ECF No. 10 at 23 n.3.)

assigning the PSOB determination "little weight," the ALJ reasoned that "[w]hether or not the [plaintiff] is disabled is a determination reserved for the Commissioner;" she also observed that "the Department of Justice uses different rules than what the SSA uses for deciding disability claims," and that its "finding is not supported by the evidence of record."  (Tr. 18.)  As explained above, the ALJ's conclusion about the evidence and her reliance on a non-examining doctor's opinion were errors.  Her additional points—that the DOJ applies different rules, and that determining disability is for the Commissioner—are not bases to discount the PSOB's determination.  *See Best v. Comm'r of Soc. Sec.*, No. 18-CV-5751, 2020 WL 1550251, at *4 (E.D.N.Y. Mar. 31, 2020) (finding that the ALJ improperly discounted findings by the Department of Veterans Affairs ("VA") because "[i]nstead of . . . explaining why the [VA's] disability determination was not entitled to significant weight, the ALJ went on to state only that '[w]hether a claimant is "disabled" or unable to work is a legal issue reserved exclusively to the Commissioner to decide.  In addition, the VA uses different rules, regulations, and guidelines to determine disability benefits under their system than Social Security'").

Moreover, the PSOB found that the plaintiff was disabled and unable to work because of both his chronic pain and his related dependence on pain medication.  (Tr. 214.)  However, "[t]he ALJ did not even attempt to summarize the [PSOB's] findings, or to apply such findings in the context of [the plaintiff's] application for benefits under the Social Security Act."  *Best*, 2020 WL 1550251, at *4 (first alteration in original) (citation omitted).  This was plain error.  *See, e.g. Longbardi v. Astrue*, No. 07-CV-5952, 2009 WL 50140, at *22 (S.D.N.Y. Jan. 7, 2009) ("Courts in this Circuit have long held that an ALJ's failure to acknowledge relevant evidence or explain its implicit rejection is plain error." (internal quotation marks omitted)).

14

Remand is required so that the ALJ can consider the PSOB's disability determination, or explain why the determination warrants little weight.[7] *See Best*, 2020 WL 1550251, at *5.

## CONCLUSION

The plaintiff's motion for judgment on the pleadings is granted and the Commissioner's motion is denied.  The case is remanded for further proceedings consistent with this opinion.

**SO ORDERED.**

s/Ann M. Donnelly

ANN M. DONNELLY
United States District Judge

Dated: Brooklyn, New York
        March 25, 2022

---

[7] The plaintiff also argues that the ALJ should have explicitly considered his use of a pain medication, Dilaudid.  (ECF No. 10 at 25-26.)  The ALJ considered the plaintiff's subjective statements about pain and his use of pain medication generally (ECF No. 8 at 21), and the plaintiff cites no authority for the proposition that an ALJ errs if she does not specifically name more potent types of medication.